### QUINCY MUTUAL FIRE INSURANCE COMPANY, Plaintiff,

v.

### Stephen CLYMAN, et al., Defendants.

### No. 95–CV–1311.

United States District Court,
E.D. Pennsylvania.

Jan. 16, 1996.

Charles A. Harad, Harad, Gittleman, Greenberg, Brunner & Love, Philadelphia, PA, for Plaintiff.

---

Stanley B. Siegel, Huntingdon Valley, PA, for Defendants: Stephen and Joanne Clyman.

Blake L. Berenbaum, Philadelphia, PA, for Defendant: Kenneth Clyman.

## MEMORANDUM AND ORDER

JOYNER, District Judge.

Before us today is the motion for summary judgment filed by the plaintiff, Quincy Mutual Fire Insurance Company ("Quincy"), in this declaratory judgment action. Quincy seeks a declaration that it is under no duty to indemnify or defend Defendants Stephen and Joanne Clyman ("the Clymans") in an ongoing personal injury lawsuit brought by the Clymans' son, Defendant Kenneth Clyman, in the Montgomery County Court of Common Pleas. For the reasons that follow, the motion for summary judgment will be denied.

## BACKGROUND

On January 15, 1993, Kenneth Clyman allegedly tripped over a dog-toy on a staircase at the home of his parents in Huntingdon Valley, Pennsylvania, and sustained injury as a result. On January 3, 1995, Kenneth initiated a personal injury suit in Montgomery County, in which he alleged that the Clymans caused his injury by negligently allowing the dog-toy to remain on the staircase. At the time of the alleged incident, the Clymans were covered by a homeowners' policy issued to them by Quincy. The policy defines "insured" to include "you or residents of your household who are your relatives." Moreover, the policy does not provide coverage for "bodily injury to you or an insured" as defined by the policy. Thus, Quincy argues in the instant motion that Kenneth is an insured within the meaning of the policy, in that he was a resident relative at the time of the alleged mishap. As a result, Quincy contends that it is under no obligation to provide coverage to the Clymans, and seeks a declaratory order to that effect.

The question for this Court, then, is whether Kenneth was a resident relative at the time of the alleged injury. The record reflects that Kenneth enrolled at Arizona State University ("ASU") in the fall of 1991 and was a full-time student there at the time of the alleged accident. Kenneth rented an apartment in Tempe, Arizona, signing a six and a half month lease in October of 1992. Moreover, Kenneth held an Arizona driver's license and registered his automobile in Arizona. During vacations from school, Kenneth would visit the family home in Pennsylvania, and then return to Tempe when classes resumed. Indeed, Kenneth was on Christmas vacation at the time of the alleged incident. Kenneth also spent time with his grandmother in Florida during breaks from school. In this manner, Kenneth remained in Arizona for approximately ten months out of the year.

The record further reflects that Kenneth was dependent upon his parents for financial support during the time he attended ASU. Kenneth's parents paid for his tuition and books, provided him with an allowance and health insurance, and listed him as a dependent child on their state and federal income tax returns. Moreover, Kenneth indicated that he was a resident of Pennsylvania on the state and federal income tax returns he completed during the relevant time period, and never officially applied for residency status in Arizona, even though he was aware that he would qualify for a reduced tuition as an Arizona resident. Kenneth never paid state income taxes in Arizona. Finally, Quincy notes that all of Kenneth's ASU-related paperwork listed Huntingdon Valley as his "home address."

## DISCUSSION

### A. Summary Judgment Standard

This Court is authorized to award summary judgment "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). Thus, the Court's responsibility is not to resolve disputed issues of fact, but to determine whether there exist any factual issues to be tried. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–49, 106 S.Ct. 2505, 2509–11, 91 L.Ed.2d 202 (1986). The non-moving party must raise

"more than a mere scintilla of evidence in its favor" in order to overcome a summary judgment motion. *Williams v. Borough of W. Chester,* 891 F.2d 458, 460 (3d Cir.1989) (citing *Liberty Lobby,* 477 U.S. at 249, 106 S.Ct. at 2510). Further, the non-moving party cannot rely on unsupported assertions, conclusory allegations, or mere suspicions in attempting to survive a summary judgment motion. *Id.* (citing *Celotex Corp. v. Catrett,* 477 U.S. 317, 325, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265 (1986)). Boiled to its essence, the summary judgment standard requires the non-moving party to create a "sufficient disagreement to require submission [of the evidence] to a jury." *Liberty Lobby,* 477 U.S. at 251–52, 106 S.Ct. at 2511–12.

### B. *Whether Kenneth was a "Resident Relative"*

■ As we noted above, the determinative issue in this action is whether Kenneth was a resident relative at the time of the alleged accident. Courts in Pennsylvania construe "residence" as one's "factual place of abode." *Krager v. Foremost Ins. Co.,* 304 Pa.Super. 390, 450 A.2d 736, 738 (1982). Thus, the residence question is a matter of physical fact, and not one of intention. *Amica Mutual Ins. Co. v. Donegal Mutual Ins. Co.,* 376 Pa.Super. 109, 545 A.2d 343, 346 (1988). Courts confronted with insurance policies that distinguish the residents of an insured's household have therefore construed such contracts to differentiate "those family members who actually live in the same household as the insured." *Erie Ins. Co./Erie Ins. Exchange v. Flood,* 168 Pa.Cmwlth. 258, 649 A.2d 736, 738 (1994) (citing *Amica,* 545 A.2d at 346).

■ Of course, this definition does not foreclose the possibility that a person could have more than one residence. Indeed, the *Amica* court held that such an outcome would pertain in the situation of a child of divorced parents who divides his time between mother and father. On the other hand, the child does not automatically have two residences "if, as a matter of physical fact, he lives at one and spends no significant time at the other." *Amica,* 545 A.2d at 349. Our Court of Appeals has likewise recognized that the quality of the contacts between the subject and the residence is critical in determining whether the subject resides with the insured. In *St. Paul Fire & Marine Ins. Co. v. Lewis,* 935 F.2d 1428 (3d Cir.1991), the court was called upon to construe whether a son was "living with" his father for purposes of coverage under the relevant insurance policy. Relying on *Amica,*[1] the court concluded that "Pennsylvania courts would probably require some regular, personal contact in order for a party to be living with the insured for purposes of insurance coverage." *Id.* at 1432. On this point, the evidence revealed that the son kept an apartment, where he slept and ate his meals on a daily basis. The evidence also indicated that the son spent holidays at the residence of his father, who maintained a bedroom there for the son and provided the son with some measure of financial support. Moreover, the son used his father's address on his driver's license, bank deposit slips, personal checks, and tax returns. Even so, the court concluded that the contacts between the son and his father's residence were insufficient to satisfy the test, and affirmed the district court's directed verdict in favor of the insurer. *Id.* at 1433.

■ In the present case, Quincy contends that any reasonable jury must conclude, in light of the evidence educed during discovery, that the Huntingdon Valley home was Kenneth's residence.[2] In support of its argument, Quincy advances much of the sort of evidence that failed to impress the Third Circuit: that Kenneth listed the Huntingdon Valley home as his address on his tax returns, that he received financial support from his parents, and that the Clymans maintained a bedroom for him in the family home.

---

1. Like the Third Circuit, we perceive no meaningful difference between the language in the policy pertinent to the *St. Paul* dispute and the policy provision of the type here at issue.

2. Quincy argues that it is entitled to summary judgment under two theories: either that Hun-

tingdon Valley was Kenneth's residence or that he resided in both Huntingdon Valley and Tempe. Under either theory, however, the relevant inquiry is whether Kenneth had the requisite contacts with the Clymans' home in Huntingdon Valley.

As the Third Circuit recognized, however, such evidence is insufficient to create an inference that Kenneth had regular, personal contacts with his parents' home. *Id.* And while there is some evidence that the Huntingdon Valley home was Kenneth's residence—Kenneth returned to his parents' home regularly during his vacations—there is also evidence from which a jury could reach the opposite conclusion. Indeed, the evidence shows that he spent the great majority of his time elsewhere, and that he had rented an apartment and become reasonably established away from the Huntingdon Valley home. The issue is therefore in dispute, making this matter inappropriate for summary disposition. Accordingly, Quincy's motion must be denied.

### CONCLUSION

We have concluded that there is sufficient evidence from which a reasonable jury could find that Kenneth was not a resident of his parents' home at the time of the alleged accident. As a result, we must deny Quincy's motion for summary judgment. An appropriate order follows.

### ORDER

AND NOW, this 16th day of January, 1996, upon consideration of Plaintiff's Motion for Summary Judgment pursuant to Fed. R.Civ.P. 56, and the response thereto, it is hereby ORDERED, for the reasons set forth in the preceding memorandum, that said motion is DENIED.